# CITY OF ST. LOUIS v. LOUISA BARTHEL et al.; J. E. BRAWNER et al., Appellants.

**Division One, April 2, 1914.**

1. **CONDEMNATION: Allegation of Ownership or Interest in Defendants: Estoppel.** An allegation by the city in its petition to condemn land for a street that defendants are the owners of the ground sought to be taken or claim some interest therein, is not an admission that they are the owners, and does not estop the city from challenging defendants' title to the ground and claim for damages.

2. ———: **Street: Partition of Lands: Reservation.** A commissioners' report in partition, reciting that they subdivided the tract "with a view to the future opening and widening of streets and alleys, and reserved sufficient ground for the purpose of being later appropriated to such streets and alleys, all of which will more fully appear by a plat hereto attached," which plat shows a street sixty feet wide with a notation of the western thirty feet thereof "reserved," the confirmation of said report by the circuit court, its record in the recorder's office, an acceptance by the coparceners of the lots abutting on said street of the lots allotted to them, an acceptance by user by the city of the whole sixty feet, and the acquiescence therein both by the city and the coparceners and their grantees for many years, amounted in law to a dedication of the whole sixty feet to the city for street purposes, and bars the grantees from said coparceners to recover damages for the thirty feet "reserved," in a condemnation proceeding brought by the city to have said thirty feet condemned for such purpose.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

AFFIRMED.

*E. P. Johnson* for appellants.

(1) Under the provisions of Sec. 2, art. 6, of the charter of the city of St. Louis, requiring the owners of the land to be taken to be named and made de-

fendants in the petition for opening a street, and that it shall not be necessary to make any party a defendant unless they are in actual possession of the premises sought to be condemned, notwithstanding the allegation in it is that the defendants own "or claim some interest therein," said petition admits the title of appellants to the premises, and the question of dedication is not within the issues herein. Olean v. Styner, 135 N. Y. 343; San Jose v. Fresychlag, 56 Cal. 9; Walbridge v. Russell County, 74 Kan. 343. Besides, the proceeding to condemn these premises estops respondent from claiming a dedication of them. Princeton v. Templeton, 71 Ill. 68. (2) Under said provision of said charter and under the general law it is sufficient that the record owner of the premises be made a party defendant. Vance v. Corrigan, 78 Mo. 94; Schnitger v. Rankin, 192 Mo. 35. The commissioners in this cause went outside of the issues in it in finding that the premises had been dedicated, exceeded their jurisdiction and undertook to decide a question triable only in the court. Buddeke v. Ziegenhein, 122 Mo. 239; Michael v. City, 112 Mo. 610; In re Commissioners, 120 N. Y. Supp. 930; San Jose v. Freyschlag, 56 Cal. 9. (4) Said report is a part of the record (St. Louis v. Brinckworth, 204 Mo. 280), but if it were not it is made such by the bill of exceptions, and the error of the commissioners in deciding that the premises had been dedicated is material error appearing on the face of the record, for which the judgment should be reversed. Sec. 2083, R. S. 1909; Guinan v. Donnell, 201 Mo. 200; Thresher Co. v. Speak, 167 Mo. App. 470; Lilly v. Menke, 126 Mo. 190; Land Co. v. Bretz, 125 Mo. 418; State ex rel. v. Scott, 104 Mo. 26. (5) The plat of the commissioners in partition of the Elbreder property is not in conformity with Art. 3, chap. 134, p.

1327, vol. 2, Wagner's Statutes 1872 (Secs. 10290-10297, R. S. 1909), and it could not have been a statutory dedication. In order to constitute a statutory dedication the statute must be strictly and literally complied with. Hertz v. St. Louis, 110 Mo. 624; Milling Co. v. Riley, 133 Mo. 584; Becker v. St. Charles, 37 Mo. 17; Buschman v. St. Louis, 121 Mo. 535; McShane v. Moberly, 79 Mo. 43; Hannibal v. Draper, 36 Mo. 336. (6) The statute in regard to partition, Sec. 21, chap. 104, p. 965, vol. 2, Wagner's Statutes 1872 (Sec. 2583, R. S. 1909), leaves it entirely optional with the commissioners whether they will "lay out streets, lanes and alleys," and Sec. 30, p. 970, of the former and Sec. 2589 of the latter merely requires them, when they have done so, to cause a copy of their report to be recorded in the office of the recorder of each county in which any of the land lies. Wainwright v. Rowlands, 25 Mo. 57. (7) To make a dedication effective, it must be absolute. If it is a reservation of the land, or a dedication on condition, it is not absolute and therefore not a dedication. Collier Estate v. Paving Co., 180 Mo. 362; Bridge Co. v. Bachman, 66 N. Y. 261; St. Louis v. Meier, 77 Mo. 13; Creamer v. McCune, 7 Mo. App. 91; Kemper v. Collins, 97 Mo. 644; Clark v. Brookfield, 81 Mo. 503. (8) An acceptance of an offered dedication, if there had been such, was just as necessary to complete the dedication as the offer, and the evidence is conclusive in this case that if there was an offer to dedicate it was refused. Paving Co. v. McManus, 144 Mo. App. 593; Edwardsville v. Barnsback, 66 Ill. App. 381; Benton v. St. Louis, 217 Mo. 687; State ex rel. v. Muench, 225 Mo. 210; McGrath v. Nevada, 188 Mo. 107. And payment of taxes goes to show no dedication. Bushman v. City, 121 Mo. 527.

The approval of the partition by the city engineer was not such acceptance. Donnen v. Kansas City, 156 Mo. 60. Further, nothing was ever expended on said premises by respondents so as to divest appellants of their title or show an acceptance of any offered dedication. Proviso to Secs. 9472 and 9694, R. S. 1899; State v. Macy, 72 Mo. App. 427; Sikes v. Railroad, 127 Mo. App. 326. (9) Only the owner of the fee of land can make a dedication of it to public use. Hannibal v. Draper, 36 Mo. 336; Paving Co. v. McManus, 144 Mo. App. 609; Edwardsville v. Barnsbach, 66 Ill. App. 387. The commissioners in partition were not owners of the land and therefore could not make a dedication of the premises except by complying with the terms of the partition statute in that respect. (10) The latter authorities dispose of the claim of respondent that the deeds of the Elbreder heirs calling for Compton avenue as a boundary were a dedication, as they had all lost their titles by tax sales previous to the execution of the deeds respectively, except Henry G. Elbreder, by executor to Louis Kohlley, and the tax lien on the land antedated the latter deed. Besides, a dedication of this character only arises by virtue of the covenant in the deed. Moses v. Dock Co., 84 Mo. 242. And an administrator does not make such covenants. The deed of Maria Lohman to Jacob Engasser has no such call in it and she is not shown to have had any title to the land described in the deed.

*William E. Baird* and *Elmer E. Pearcy* for respondent.

(1) The mere fact that the appellants in this cause were made parties defendant does not admit that they have title to any portion of Compton avenue to be opened by Ordinance No. 23567. The peti-

tion alleges that the "defendants named in the caption to this petition are the owners, respectively, of the several parts of the premises hereinbefore described, or claim some interest therein." That the appellants claim some interest is shown by the fact that they contested the case in the lower court and are now appealing. In condemnation cases where a street is being opened the very purpose of the proceeding is to acquire the title to the land for street purposes and to foreclose as far as possible all outstanding claims that are asserted against the same. This is done as a matter of precaution so that when the street is paved or otherwise improved there can be no possible defense to the tax bills issued by the city to pay contractors for the doing of the work. The petition does not admit the title of defendants, but asserts that they claim an interest in the same. This has no bearing at all upon the question of dedication. Moses v. Dock Co., 84 Mo. 246. (2) The commissioners did not go outside of the issues in finding that the premises had been dedicated and they did not exceed their jurisdiction when they so found in their report. They were appointed for the purpose of trying and determining all questions of values and if a parcel of land included within the boundaries as defined by Ordinance 23567 was already a public highway, it was necessary for them to so find in order that their report would show that they had not omitted or overlooked this part of the highway to be opened. The appellants filed their exceptions to this section of the commissioners' report and had a trial upon the issues set out in their exceptions and the circuit court confirmed the findings of the commissioners. (3) There was a complete statutory dedication of the parcel of land claimed by these appellants. This dedication results from the partition

suit, the filing for record in the recorder's office of the commissioners' report in partition, and the plat attached thereto, which plat was duly certified to by the city engineer, and shows Compton avenue reserved as a public street.   Wagner's Statutes 1872, chap. 134, secs. 1, 2, 3, 4, 5, 6, 7, 8 and 9, pp. 1327-8; Wagner's Statutes 1872, chap. 104, secs. 21 and 30, p. 970; Act Revising Charter of St. Louis enacted adjourned session Missouri Legislature, 1870, approved March 4, 1870, appearing in Laws 1869-70, sec. 1, art. 12, p. 486. (4) If the court should find that the facts in this case do not warrant a valid statutory dedication, however, they do constitute a valid common law dedication. Heitz v. St. Louis, 110 Mo. 624; Pry v. Mankedick, 172 Pa. St. 535; Moses v. Dock Co., 84 Mo. 242; Elliott on Roads & Streets (3 Ed.), secs. 128-129; Dillon on Mun. Cor. (3 Ed.), sec. 628; Ib. (5 Ed.), sec. 1083; Hannibal v. Draper, 15 Mo. 634; Thomas v. Hunt, 134 Mo. 392; Buschman v. City, 121 Mo. 523; Ferrenbach v. Turner, 86 Mo. 419; Belcher v. St. Louis, 82 Mo. 121; Reid v. Board of Education, 73 Mo. 295.   The word "reserved" used in the plat does not mean that title is "reserved" in the owners.   The proprietors in this case have done all that they could to cause a dedication of the strips of land marked reserved on the plat.   The word "reserved" relates to the future action of the municipal authorities, and not to the proprietors.   The statute at that time required an approval of the city engineer of all plats showing that the streets designated conformed to the city plan, and this is what is meant by the word "reserved."   These strips were reserved for public highways to be used by the respective owners of the several lots as such, and upon the city designating its willingness to accept the same, it becomes liable for the safety of such streets. Streets indicated on plats made in partition proceed-

ings are subject to the foregoing doctrines of dedication. Indianapolis v. Kingsbury, 101 Ind. 200; Lake View v. Le Bahn, 120 Ill. 92; Wisby v. Bonte, 19 Ohio St. 238. (5) It is not necessary for the city to accept an offered dedication in order to make it valid. It may be necessary in order to impose the duty of keeping the street in proper condition to show that the public authorities have indicated their acceptance of the same and their willingness to assume control and authority over it. If the interests of third persons have arisen by the sale or transfer of lots the title has passed out of the original owners and has vested in the public. Grogan v. Howard, 4 Fed. 164; Thurston v. St. Joseph, 51 Mo. 512; Heitz v. St. Louis, 110 Mo. 624; McGinnis v. St. Louis, 157 Mo. 197. (6) The assessor had no authority under the laws of the State to assess this property for taxes and the assessment is void for the reason that it was against a parcel of land subject to a public use. City v. Gorman, 29 Mo. 593; Hannibal v. Draper, 36 Mo. 332; Bushman v. St. Louis, 121 Mo. 537; Moses v. Dock Co., 84 Mo. 242; Wright v. Doniphan, 169 Mo. 613.

WOODSON, P. J.—This suit was duly instituted in the circuit court of the city of St. Louis to condemn certain lands particularly described in the petition for street purposes.

A trial was had which resulted in a judgment for the city, and the defendants, J. E. Brawner, W. P. McCrory and Anna M. Hilton, appealed the cause to this court.

The common source of title, as I gather from the record, was Henry Elbreder, who owned the land and died intestate in the year 1860.

The street in question was Compton avenue; and the strip of ground sought to be condemned was some

seven blocks in length, and among other tracts was one thirty feet wide and some six hundred feet in length, claimed by the appealing defendants as belonging to them.

The city claims this particular strip of ground under a partition decree dedicating it for street purposes in the year 1874; while appellants claim through mesne conveyances from Elbreder.

The real contention of the parties to this appeal is fairly well stated by counsel for appellants in the following language:

"On November 14, 1908, respondent filed in the court below a petition for the condemnation as a public highway of respondent, of the west half of Compton avenue, as shown on the Elbreder partition plat and marked reserved thereon, and marked Anna M. Hilton, as owner, pursuant to ordinance on the plat attached to the report of the commissioners in the cause, which piece of land is 30 by 600 feet. The proceedings were regular and there is no conflict in the testimony or evidence nor any objection to any of the documentary evidence that challenges the sufficiency of any of it for the purpose for which it was intended, leaving only the proper construction of the pleadings, report of the commissioners and the evidence to be passed on by this court, to determine whether there had been a dedication or an acceptance by respondent of the same, if made, of said land, as a public highway, either by dedication shown by said commissioners' plat, or by calls for Compton avenue as a bounding street in conveyances made by the heirs."

As indicated by the foregoing statement of counsel, there is no dispute as to the facts; and since they are fully set out by counsel for respondent I will adopt their statement as the statement of the case, which is as follows:

"Commissioners [in this suit] were duly appointed after proper service upon all parties who owned or claimed any interest in the property, and their report, together with plats attached thereto, which were furnished by the street commissioner of the city of St. Louis, under authority of ordinance, was filed in the circuit court on the 13th day of October, 1909. The plat attached to the report of the commissioners in this condemnation suit shows the following situation:

"That Compton avenue from Gravois avenue southwardly to Osage street was a public highway in the city of St. Louis of irregular width. At some places it was thirty feet wide; at others sixty feet wide. The purpose of this ordinance, as shown by the plat, was to make a street, with uniformly straight east-and-west lines, from Gravois avenue to Osage street, sixty feet wide. It shows that the center line of the proposed street was a straight line extending from Gravois avenue to Osage street, and that to make it sixty feet wide through this entire length in some cases required the condemnation of thirty feet westwardly from this center line and in some cases thirty feet eastwardly from the said line; at other places it is already sixty feet wide. Compton avenue is a north-and-south street. The section of Compton avenue included within Ordinance 23567 from Gravois avenue to Osage street is crossed by the following east-and-west streets southwardly from Gravois avenue in the following order: Utah street, Cherokee street, Potomac street, Miami street, Winnebago street, Chippewa street, Keokuk street and Osage street. As the exceptions filed on the part of the defendant Hilton relate only to property which she claims, we shall describe the blocks bounded on the north by Winnebago, and on the south by Chippewa

street, a little more minutely. The plat appearing in
the appellants' abstract shows City Block 1619 and
one-half of City Block 1622. The strip of land shown
on this plat which Anna M. Hilton claims to own in
fee, extends from the south line of Winnebago street
to the north line of Chippewa street, a distance of six
hundred feet, and has a width of thirty feet. This
strip of land thirty feet wide is the western half of
Compton avenue as established by Ordinance 23567.
The eastern half of this street is shown on this plat
with the following notation (which is very indistinct):

" 'Heirs of William B. Betts, deceased, viz.:
Elizabeth L., William, Carrie, Leonard Betts, and
Julia Parsons, wife of Charles T.'

"This strip of land has the same dimensions as
the strip in which appellant Hilton claims an interest.
It is the eastern half of the street and extends from
Winnebago southwardly to Chippewa street. The plat
shows City Block 1619 as Elbreder's Estate Subdi-
vision; the plat shows City Block 1622 as Betts' Sub-
division. Virginia avenue bounds City Block 1619 on
the west and Michigan avenue bounds City Block 1622
on the east. Both blocks are subdivided in the same
manner. Each block has a frontage of 270 feet on
the south line of Winnebago street and 270 feet on the
north line of Chippewa street. Block 1622 has a front-
age of 600 feet on the west line of Michigan avenue,
and Block 1619 has a frontage of 600 feet on Virginia
avenue. There are twelve lots in each block fronting
on Compton avenue between the alley south of Winne-
bago street and the alley north of Chippewa street.
The lots in City Block 1619 extend from the west line
of the property in which the appellant Hilton claims
an interest westwardly for a distince of 125 feet to
an alley. The lots in City Block 1622 front upon the

east line of the strip of land, in which the heirs of
William Betts claim an interest, and extend east-
wardly for a distance of 125 feet to an alley. These
twenty-four lots, twelve in City Block 1619 and twelve
in City Block 1622, have no outlet except over the
two strips of land in which Hilton and Betts claim an
interest. In City Block 1619 the twelve lots fronting
on this strip of land claimed by Hilton are owned by
eleven separate and distinct proprietors, and if the
contention of the appellant be true, that the land shown
on the plat in the name of Anna M. Hilton is not a
street, and that the alley in the rear shown in the name
of the heirs of Elbreder is not an alley, the present
owners of this property have no possible method of
getting to their property except over the property of
others.

"In the year 1849 the east half of the southwest
quarter of Block 69 of the Commons of the City of St.
Louis was acquired by Henry Elbreder in a partition
by a partition deed. This eastern half of the south-
west quarter of Block 69 comprises what is shown by
the plat in the appellants' abstract, as City Block 1619
[which will be presently set out and marked 'Exhibit
A'].

"Henry Elbreder died in 1860 and at the time of
his death he was still the owner of this property, now
known as City Block 1619.

"On May 11, 1874, a partition suit was instituted
in the circuit court of the city of St. Louis for the
partition of this property among the heirs of Henry
Elbreder. Commissioners were duly appointed and
returned into court their report in the proper form
partitioning all of this property on the 30th day of
November, 1874. The plat showing the method of
partition was attached to said report [which will be
set out and marked 'Exhibit B'].

"The commissioners' report in partition recites that they 'proceeded to view and examine the premises and they thereupon laid them off in blocks and lots, in compliance with the manner of subdividing lots and blocks within the limits of the city of St. Louis, and with a view to the future opening and widening of streets and alleys, and reserved sufficient ground for the purpose of later being appropriated to such streets and alleys, all of which will more fully appear hereto attached,' etc. The report recites the different lots assigned to the different heirs, which is in accordance with the designations made upon appellants' 'Exhibit B.' This plat designates Virginia avenue, which bounds the property on the west as sixty feet wide. It marks the eastern thirty feet of this sixty-foot strip street, however, as 'reserved.' This thirty-foot strip was a portion of the property owned by Henry Elbreder. It shows Compton avenue as sixty feet wide with the notation on the western thirty feet 'reserved.' This western thirty feet was part of the property owned by Henry Elbreder included in the partition suit. The plat shows Winnebago street sixty feet wide with the notation on the south thirty feet 'reserved.' It shows an east-and-west alley parallel with Chippewa street and northwardly therefrom 125 feet. This alley is shown as twenty feet wide, and extends entirely through this block from Virginia avenue to Compton avenue. It shows an east-and-west alley twenty feet wide extending from Compton avenue to Virginia avenue, said alley being parallel with Winnebago street and distant southwardly therefrom 125 feet. It shows a north-and-south alley extending from the east-and-west alley on the north to the east-and-west alley on south through this city block. This north-and-south alley is shown on the plat as twenty feet wide. The plat also shows that Compton avenue

extends southwardly from Chippewa street and north-wardly from Winnebago street in each case with the center line coincident with the center line of Compton avenue, marked on the plat as sixty feet wide, extending in front of the Elbreder's property, as shown by Exhibit B.

"This commissioners' report was confirmed by final judgment in the partition suit entered on the 4th day of January, 1875. The proceeding in partition, including the report of the commissioners and the plat attached thereto, was filed for record in the recorder's office on the 24th day of September, 1875. Before filing the same the plat was taken to the city engineer of the city of St. Louis and he certified that the location of the streets and alleys represented thereon was in conformity with the official city plan on file in his office. So that on the 24th day of September, 1875, after having obtained the approval of the city engineer as to the location of streets and alleys designated on the plat, the decree and the report and plat of the commissioners in the partition case were placed on record in the recorder's office of the city of St. Louis.

"The endorsement of the city engineer is as follows:

" 'City Engineer's Office,
" 'St. Louis, September 23, 1875.

" 'I hereby certify that the location of streets and alleys as represented on the above map is in conformity with the official city plan on file in this office.

" 'WALTER KATTE, City Engineer.'

"The commissioners in their report, partitioning the real estate among the heirs, used this language:

" 'And thereupon they made partition of said lands in manner following, that is to say:

" 'To Catherine Elbreder, the plaintiff, they set off, allotted and assigned the following: Lots numbered 1, 2 and 3, having a front on Chippewa street of 85 feet in the aggregate, by a depth northwardly along Compton avenue of 125 feet to an alley 20 feet wide . . . bounded north by an alley, east by Compton avenue,' etc.

" 'To Henry Elbreder . . . lots numbered 33, 34, 35 and 36, having a front of 105 feet on Compton avenue by a depth westwardly of 125 feet to an alley 20 feet wide, and bounded north by an alley running east and west, east by Compton avenue . . . west by an alley running north and south.

" 'To Theresa, wife of Ernst Reisse . . . lots numbered 41, 42, 43 and 44, having a front of 105 feet on Compton avenue by a depth westwardly of 125 feet to an alley 20 feet wide, and bounded . . . east by Compton avenue, south by an alley running east and west, west by an alley running north and south.

" 'To George Elbreder . . . lots numbered 37, 38, 39 and 40, having a front of 100 feet in the aggregate on Compton avenue by a depth westwardly of 125 feet to an alley 20 feet wide, and bounded north by lot number 36, east by Compton avenue, south by lot 14 and west by an alley.

" 'To Dorothea Nieman . . . lot 32 having a front of 28 feet on Winnebago street by a depth southwardly and along Compton avenue of 125 feet to an alley 20 feet wide, and bounded north by Winnebago street, east by Compton avenue, south by an alley.'

"The commissioners in partition throughout the entire length of their report describe the property allotted to each heir as fronting upon a street and extending to an alley. The plat of the commissioners

in partition attached to their report shows the same situation. The plat does not show that these lots extend to the center of Compton avenue, sixty feet wide; no allotment is made to any of the heirs extending beyond the boundaries of the streets which are shown on the plat as sixty feet wide.

"The deeds introduced in evidence by respondent show that all of the heirs who became the owners in the fee of the several lots awarded to them in the partition suit, transferred said lots to third parties.

"On the 11th day of June, 1877, Anton Elbreder, the administrator of the estate of Henry G. Elbreder, deceased, under an order of sale by the probate court, sold and conveyed to Louis Kohlby Lots 33, 34, 35 and 36, in City Block 1619, describing the property as having 'a front of 105 feet on Compton avenue, by a depth westwardly of 125 feet to an alley . . . bounded north' by an alley running east and west; east by Compton avenue.'" The deed also recites: "All of the aforesaid lots are situated in Elbreder's Subdivision."

"As to the power of the administrator to sell said real estate the deed recites: 'That, whereas, the probate court of the county of St. Louis, State of Missouri, at its March term, 1877, made an order of sale directing the administrator of said estate of Henry B. Elbreder, deceased, to sell certain real estate in said order of sale mentioned, that said administrator had caused the real estate directed to be sold to be appraised by three disinterested householders of St. Louis county, as the law directs, and also caused a notice of the time, terms and place of said sale to be published for four weeks prior thereto in the St. Louis Times, a newspaper printed in the English language and published in said county of St. Louis, Missouri.'

This deed was recorded in the recorder's office on the 14th day of June, 1877, in book 574, p. 303.

"On the 12th day of January, 1878, Henry Reisse and wife, by their trustee, John E. Wurtzebach, trustee under deed of trust, executed by Ernst Reisse and Theresa, his wife, dated November 10, 1874, sold and conveyed to Maria Lohrmann 'the undivided six twenty-fifths interest in, to and out of the east half of the southwest quarter of Block 69 of the Commons of the city of St. Louis, in the State of Missouri.' This deed, executed by the trustee, recites that it is executed in pursuance of a trust imposed by a certain deed of trust, dated November 10, 1874.

"Maria Lohrmann, the grantee in the deed last above mentioned, conveyed to Jacob Engasser, by deed dated September 13, 1883, Lots 41, 42, 43 and 44, in City Block 1619, and in said deed describes said lots as 'having an aggregate front of 105° feet upon the west side of proposed Compton avenue by a depth westwardly of 125 feet, and being bounded west and south by an alley, north by Sutmoeller, and east by proposed Compton avenue.'

"On the 21st day of February, 1883, George Elbreder and wife sold and conveyed to John D. Sutmoeller Lots No. 37 and 38 in City Block 1619, and described said lots as 'having an aggregate front of fifty feet on the west line of Compton avenue, by a depth westwardly of 120 feet to an alley, and being bounded east by Compton avenue, west by an alley, south by Elbreder and north by Kholby.'

"By a deed of trust dated April 6, 1883, George Elbreder and wife sold and conveyed to John D. Sutmoeller Lots 39 and 40 in City Block 1619, and described said lots as 'having a front of fifty feet on the west line of Compton avenue, by a depth of 125 feet to an alley.'

"On the 17th day of October, 1885, Dorothy Sanders, formerly Dorothy Nieman, then the wife of William L. Sanders, and William L., her husband, sold and conveyed to Margaretta Nieman, Lot No. 32 in City Block 1619, which had been allotted to Dorothy Nieman by the commissioners in partition, and in said deed described said lot as having 'a front of 28 feet on the south line of Winnebago street by a depth southwardly and along Compton avenue of 125 feet to an alley 20 feet wide, and bounded north by Winnebago street, east by Compton avenue, south by the alley aforesaid,' etc.

"On the 17th day of September, 1887, George Elbreder, executor of the estate of Catherine Elbreder, deceased, by order of probate court of the city of St. Louis entered at the June term, 1887, sold and conveyed to William Sanders all the right, title and interest of Catherine Elbreder, deceased, in and to Lots 1, 2 and 3 in City Block 1619, and in said deed described the lots as having an aggregate front of 85 feet on the north line of Chippewa street and 125 feet on Compton avenue.

"It will be seen from the extracts that, in all these deeds executed by the owners who acquired title in the partition suit, the lots conveyed were designated as fronting upon streets and extending to alleys. All of these lots in City Block 1619 have, since the date of said deeds, been transferred by mesne conveyances to the parties now owning them, as shown by the plat attached to the commissioners' report in this condemnation suit.

"The appellants have introduced in evidence certain condemnation proceedings bearing upon the question of *res adjudicata*. The first proceeding is the case of the City of St. Louis v. J. Oliver. The Oliver suit was a suit in condemnation for the opening of Winnebago street from Nebraska avenue to Louisiana avenue. This section of Winnebago street, to be opened

under this proceeding, extended several blocks east
and west. Final judgment in this cause was entered
on February 9, 1895. The appellants' record in this
case does not show what the issues were in the Oliver
case; neither are the pleadings set out, nor any of the
evidence or the judgment of the court. The appel-
lants' record, so far as the Oliver case is concerned,
shows only a suit in condemnation; that a commission-
ers' report was filed in the cause, and allowance was
made of $480 in favor of one J. Oliver for the taking
of a parcel of land 30 by 330 feet along the north side
of the Elbreder subdivision for use of Winnebago
street as a public highway, and that this report was
confirmed by the judgment of the circuit court, which
established said Winnebago street as a public high-
way on the condition of the payment or the tender of
damages assessed by the commissioners. The record
does not show that an appropriation ordinance was
ever passed or that the city ever took advantage of
this judgment by paying the damages. It does show,
however, that the parcel which the appellants are
claiming was taken for Winnebago street and upon
the taking of which they base the question of *res ad-
judicata,* was a separate and distinct parcel of land
from the parcel involved in this appeal, which is 30
by 600 feet.

"The next proceeding is the case of the City of
St. Louis v. Rankin. This was a proceeding to open
Compton avenue. Final judgment in the Rankin case
was entered on the 28th day of July, 1897. Appel-
lants' abstract shows that after the judgment in the
Rankin case no appropriation ordinance was ever
passed to take advantage of the same and that, there-
fore, the judgment of the court confirming the commis-
sioners' report was never made a finality by the ap-
propriation by the city of the money necessary to pay
the damages.

"The next proceeding is the case of the City of St. Louis v. Elizabeth Bocka, for the opening of Virginia avenue. The appellants' record in this case shows that after the commissioners' report was filed on the 20th day of April, 1897, the cause was dismissed on the 5th day of April, 1898; that final judgment was not entered in the Bocka case, and that the proceeding was abandoned and dismissed at the motion of the plaintiff.

"The next case is the case of the City v. Bocka, filed on the 5th day of June, 1904, for the opening of Virginia avenue. The record of this proceeding shows that the commissioners' report was filed on the 2d day of October, 1905; that the commissioners found in this case that the damage for the strip of land taken for Virginia avenue, on the west side of the Elbreder subdivision, was one dollar, but the proceeding was dismissed on motion of defendants in this cause. This was done undoubtedly on account of the fact that the charter provides that no suit shall be brought for ten years for the condemnation of the same property after a commissioners' report has been filed in the case, and the record shows that this second Bocka suit was filed six years after the first suit had been disposed of.

"The next proceeding is the case of the City v. Bocka for the opening of Virginia avenue. The petition in this case was filed on November 16, 1908. The commissioners assessed the damages to the property in which Anna M. Hilton claimed an interest at the time at the sum of $2728. The record shows that final judgment was entered in this cause confirming the report of the commissioners, but that this judgment was entered after the hearing of the appellants' exceptions in this cause, and it is, therefore, not a part of this record. We might state, however, since this has been incorporated in the record, that in that case an assess-

ment against the city of one dollar was made by the commisioners. All the rest of the damages were assessed against private property. The city filed exceptions to the commissioners' report on the ground that the allowance of $2728 to Hilton was improper, as the land was already a public highway, and had a trial on these exceptions. At the trial of these exceptions the appellants in this cause took the position that the city had no right to except on account of the fact that only one dollar had been assessed against the city and tendered the one dollar so assessed to the city, and the circuit court took the view that the city had no right to except and dismissed its exceptions. This case not only shows that the city of St. Louis did not acquiesce in the finding of the commissioners, but that it excepted and attempted to have the commissioners' report set aside, but owing to the legal proposition raised by these appellants the court found that the city was not injured by the report because only one dollar had been assessed against the public generally, and that the city had no right to except.''

EXHIBIT "B."

I. There are but two questions of law presented by this appeal, namely: first, Is the city estopped by the pleading from questioning the title of appellants to the property in question; and, second, did the partition decree mentioned in the evidence amount to a dedication of said strip of ground to the city for street purposes?

We will dispose of these questions in the order stated.

Attending the first: The petition in this case in substance stated that the defendants named in the caption of the petition were the owners, respectively, of the several parts of the premises therein described, or that they claimed some interest therein.

Counsel for appellants, with more plausibility than soundness of logic, contends that the city by the above charge solemnly admitted by record that the appealing defendants were the owners of the strip of ground in controversy, and that it should not now be heard to contradict the allegations of the petition.

**Condemnation: Ownership: Admissions of Petition.**

The very purpose of condemnation proceedings is to ascertain and acquire title to the land sought for street purposes, and to foreclose all outstanding claims and interests that are, or may be, asserted thereto by others.

If that was not true, then the city in attempting to condemn a strip of ground for street purposes, might through mistake or inadvertence, charge in the petition, that John Jones owned the ground or claimed some interest therein, and would thereby be compelled to pay him for the same when perhaps the evidence might conclusively show that he had no interest in it whatever.

The suit is one of inquiry as to who the owners of the land are, as well as to condemn it for public purposes, which could not be done without all those who

·claimed title or interest therein are made parties to the suit.

This is done as a matter of precaution so that when a street is opened and improved it will become a public highway for various kinds of traffic, the means of ingress and egress to and from the adjacent property, and make certain the right of the city to improve the same and guarantee to the contrators the payment of the tax bills issued to them for the improvements made.

This litigation conclusively shows that the appealing defendants are claiming title to this ground, and the wisdom of the city in making them parties defendants.

These views are fully supported by the case of Moses v. St. Louis Sectional Dock Co., 84 Mo. 242, l. c. 246-247.

We are therefore of the opinion that the city was not estopped by the petition from challenging appellants' title to the land.

II. The second proposition must also be decided against the appellants, for the reason that the report of the commissioners made in the partition suit mentioned, accompanied by the plats filed, show conclusively that the west thirty feet of Compton avenue, the land in controversy, was laid out and reserved, or dedicated as a public street of the city, whenever it saw proper to accept the same, either by user or formal acceptance.

The parties to that suit received, or at least they thought they received, full and fair compensation for the strip of land in question, by the partition of the estate, by the circuit court of that county; otherwise, I naturally presume that the interested parties would have appealed the case to this court; but not having

done so, they and their privies in blood and contract, are firmly bound thereby.

Moreover, the city and the various parties who have for all of these years considered and acted upon the belief that Compton avenue was a public thoroughfare, and the latter having purchased property and improved the same upon the understanding and belief that it was a public street, should not be prejudiced by the failure of the interested parties to use technical words in the dedication of the street. The words used clearly indicate that the strip of ground in question was intended as a street, and since all parties so considered it to be such, it would be extremely unjust at this late date to declare to the contrary.

I am firmly impressed with the idea that the appellants are trying to make the city pay them for this strip of land, which they never owned, upon the flimsy pretense that the commissioners who partitioned the land used the words "reserved for street purposes" instead of stating that the same was set aside and dedicated therefor.

There is no justice or equity in such a contention.

Viewing the case as we do, we are of the opinion that the judgment of the circuit court should be affirmed; and it is so ordered. All concur.